# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| Mark Hennessy,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>USA Vein Clinics of Texas PLLC, USA Vein Clinics of Houston PLLC, USA Vein Clinics LLC, and Yan Katsnelson<br><br>　　　　Defendants. | Case No. 4:25-cv-3030<br><br>**ORIGINAL COMPLAINT**<br><br>JURY TRIAL DEMANDED |

## ORIGINAL COMPLAINT

Plaintiff Mark Hennessy ("Plaintiff" or "Hennessy"), for his Original Complaint against Defendants USA Vein Clinics of Texas PLLC, USA Vein Clinics of Houston PLLC, USA Vein Clinics LLC ("USA Vein"), and Yan Katsnelson ("Katsnelson), alleges as follows:

　　1.　　This action is brought by Plaintiff arising from Defendants' retaliation against him because of his efforts to stop Defendants' false and fraudulent statements, reports and claims for payment that Defendants and their affiliated companies routinely and intentionally submitted to the United States Government. This billing violated the False Claims Act and Defendants' retaliation violated the anti-retaliation provision of the federal False Claims Act, 31 U.S.C. §§ 3730(h).

　　2.　　Hennessy also sues for conversion of funds Hennessy sent to USA Vein to pay for COBRA health insurance coverage, which USA Vein converted rather than used to procure health insurance for Hennessy, in breach of Defendants' fiduciary duty and federal law.

## I.  JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732.

4. This Court has personal jurisdiction and venue over Defendants pursuant to 28 U.S.C. § 1391(b) and 31 U.S.C. § 3732(a). Jurisdiction is proper over the Defendants because the Defendants can be found in, reside in, and/or have transacted business within this Court's jurisdiction, and some of the acts in violation of 31 U.S.C. § 3729 occurred within this district.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) & (c) and 31 U.S.C. § 3732(a) because Defendants reside in or transact business in this district and because a substantial portion of the events or omissions giving rise to the claims alleged herein occurred in Harris County, Texas which is within this District. Plaintiff is familiar with Defendants' fraudulent practices alleged in this Complaint and is aware that the pervasive misconduct at issue occurred in this District.

## II.  PARTIES

6. Plaintiff Mark Hennessy is a former employee of USA Vein, and a citizen and resident of Harris County, Texas.

7. Defendant USA Vein Clinics of Texas PLLC is a professional limited liability company incorporated and doing business in Texas. Its registered address is 304 Wainwright Dr., Northbrook, IL 60062-1900. It can be served through its registered agent, Corporate Creations Network Inc., 5444 Westheimer #1000, Houston, TX 77056, or through its attorney who is representing USA Vein in this matter, Alexander Drapatsky, Astor Law Group, P.C., 555 Skokie Blvd, Suite 500, Northbrook, IL 60062, adrapatsky@astorlawgroup.com.

8.     Defendant USA Vein Clinics of Houston PLLC is a professional limited liability company incorporated and doing business in Texas. Its registered address is 304 Wainwright Dr., Northbrook, IL 60062-1900. It can be served through its registered agent, Corporate Creations Network Inc., 5444 Westheimer #1000, Houston, TX 77056, or through its attorney who is representing USA Vein in this matter, Alexander Drapatsky, Astor Law Group, P.C., 555 Skokie Blvd, Suite 500, Northbrook, IL 60062, adrapatsky@astorlawgroup.com. The Texas Secretary of State forfeited the charter of USA Vein Clinics of Houston PLLC on February 23, 2024.

9.     Defendant USA Vein Clinics LLC is a limited liability company incorporated and doing business in Illinois. Its registered address is 304 Wainwright Dr., Northbrook, IL 60062-1900. It can be served through its registered agent, Corporate Creations Network Inc., 1320 Tower Road, Schaumburg, Illinois 60173, or through its attorney who is representing USA Vein in this matter, Alexander Drapatsky, Astor Law Group, P.C., 555 Skokie Blvd, Suite 500, Northbrook, IL 60062, adrapatsky@astorlawgroup.com.

10.    Defendant Yan Katsnelson is a citizen of Illinois, residing in Illinois. He can be served at his office, located at 304 Wainwright Dr., Northbrook, IL 60062-1900.

### III.    FACTS

**A.     Hennessy's Employment at USA Vein**

11.    Mark Hennessy ("Hennessy") began working for USA Vein as a physician specializing in phlebology and treatment of venous insufficiencies, including varicose veins, in June 2023.

12.    He saw about 20 to 30 patients per day and the majority of patients he saw were Medicare beneficiaries.

13.    While working at USA Vein, Dr. Hennessy saw multiple forms of false billing, further described below.

14. In December 2023, Dr. Hennessy called USA Vein's CEO, Dr. Yan Katsnelson, to oppose the false billing.

15. Within a few weeks of this phone call, on December 27, 2023, USA Vein terminated Dr. Hennessy in retaliation for Dr. Hennessy's opposition to the false billing.

16. After Dr. Hennessy was terminated, he elected to receive COBRA health insurance coverage through USA Vein and mailed checks every month to USA Vein for his premium.

17. USA Vein converted the money Dr. Hennessy sent for COBRA health insurance and kept the money, rather than using the funds to secure health insurance for Dr. Hennessy.

18. Dr. Hennessy did not learn about the conversion until he made a doctor's appointment and learned that he had no health insurance.

19. By keeping Dr. Hennessy's monthly COBRA payment and not using them to procure health insurance for him, Defendants are liable for breach of fiduciary duty and violation of federal law, including 29 U.S.C.S. § 1132.

## IV. LEGAL CLAIMS

### A. The Federal False Claims Act's Anti-Retaliation Provision

20. The False Claims Act provides, *inter alia*, that any person who--

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
>
> (C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G); . . . or
>
> (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,

>is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-4101), plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C.A. § 3729 (a)(1)(A-G).

21. The term "claim" includes "any request or demand, whether under a contract or otherwise, for money . . . that—

>(i) is presented to an officer, employee, or agent of the United States; or

>(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government--

>>(I) provides or has provided any portion of the money or property requested or demanded; or

>>(II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded . . .

31 U.S.C.A. § 3729 (a)(2).

22. The Relief from Retaliatory Actions provision of the False Claims Act states:

>(1) In general.
>Any employee . . . shall be entitled to all relief necessary to make that employee . . . whole, if that employee . . . is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.
>
>(2) Relief.
>Relief under paragraph (1) shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. . .

31 U.S.C.A. § 3730(h).

23. To state an FCA retaliation claim, a plaintiff must allege sufficient facts to demonstrate: "(1) he engaged in protected activity, (2) his employer, or the entity with which he has contracted or serves as an agent, knew about the protected activity, and (3) he was retaliated against because of his protected activity." *United States ex rel. Bias v. Tangipahoa Parish Sch. Bd.*, 816 F.3d 315, 323 (5th Cir. 2016) (reversing the dismissal of an FCA retaliation claim). *See also Haynes v. Breathing Ctr. of Hous.*, No. 4:15-CV-02569, 2016 U.S. Dist. LEXIS 80685, at *9 (S.D. Tex. June 21, 2016); and *Mackey v. Fluor Intercontinental Inc.*, No. 4:15-CV-01913, 2015 U.S. Dist. LEXIS 141421, at *8 (S.D. Tex. Oct. 16, 2015).

24. "A protected activity is one motivated by a concern regarding fraud against the government." *Mackey*, 2015 U.S. Dist. LEXIS 141421 at *7 (citing *Thomas v. ITT Educ. Servs., Inc.*, 517 F. App'x 259, 262 (5th Cir. 2013) and *Riddle v. Dyncorp Int'l, Inc.*, 666 F.3d 940, 941 (5th Cir. 2012)). Protected activity under the FCA includes expressing concerns regarding false representations being made to the government in order to obtain government funds. *Id*.

25. To prevail on a claim for retaliation under the False Claims Act, an employee need not prove that his employer was violating the False Claims Act.[1] Rather, "an employee's actions must be aimed at matters that reasonably could lead to a viable claim under the Act," but the "employee need not 'have filed an FCA lawsuit or . . . have developed a winning claim at the time of the alleged retaliation.'" *Miniex v. Hous. Hous. Auth.*, 400 F. Supp. 3d 620, 639 (S.D. Tex.

---

[1] *See Jacquez v. Geo Int'l Mgmt., LLC*, No. 20-CV-183, 2022 U.S. Dist. LEXIS 165916, at *37 (W.D. Tex. Sept. 9, 2022) (finding that defendant was not entitled to judgment as a matter of law even if it established that it was not defrauding the government, as long as the plaintiff reasonably believed that the defendant violated the FCA.); *United States ex rel. Wuestenhoefer v. Jefferson*, 105 F. Supp. 3d 641, 676 n.28 (N.D. Miss. 2015) (rejecting the argument that a relator must prove the defendant engaged in fraud in order to justify a finding that she engaged in protected activity).

2019) (citing *U.S. ex rel. George v. Bos. Sci. Corp.*, 864 F. Supp. 2d 597, 604-05 (S.D. Tex. 2012) and *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 236 (1st Cir. 2004)).

26. "To satisfy this standard, the employee's actions must be motivated by a 'good faith' and objectively reasonable belief—*i.e.*, 'a reasonable employee in the same or similar circumstances might believe'—that his 'employer is committing fraud against the government.'" *Miniex*, 400 F. Supp. 3d at 639-40 (citing *George*, 864 F.Supp.2d at 605, and *Thomas v. ITT Educ. Servs., Inc.*, 517 F. App'x 259, 263 (5th Cir. 2013) (per curiam).

### B. The Texas Anti-Retaliation Provision

27. The Texas Health Care Program Fraud Prevention Act ("Texas FPA") includes a similar anti-retaliation provision to protect employees who engage in efforts to stop Medicaid fraud.

> (a) A person, including an employee, … who is discharged, ... because … efforts taken by the person to stop one or more violations of Section 36.002[2] is entitled to:
> (1) reinstatement with the same seniority status the person would have had but for the discrimination; and
> (2) not less than two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorney's fees.
> (b) A person may bring an action in the appropriate district court for the relief provided in this section.
> (c) A person must bring suit on an action under this section not later than the third anniversary of the date on which the cause of action accrues. For purposes of this section, the cause of action accrues on the date the retaliation occurs.

TEX. HUM. RES. CODE §36.115.

---

[2] TEX. HUM. RES. CODE §36.002 states, in part, that a "person commits an unlawful act if the person: (1) knowingly makes or causes to be made a false statement or misrepresentation of a material fact to permit a person to receive a benefit or payment under a health care program that is not authorized or that is greater than the benefit or payment that is authorized; (2) knowingly conceals or fails to disclose information that permits a person to receive a benefit or payment under a health care program that is not authorized or that is greater than the benefit or payment that is authorized…"

## V.     VIOLATIONS OF FALSE CLAIMS ACT AND TEXAS FPA

28.     USA Vein engaged in a few different false billing schemes as described below.

### A.     Medically Unnecessary RFA

29.     Radiofrequency ablation, also known as RFA, is a treatment for varicose veins using radiofrequency energy to close off varicose veins. When a doctor experiences difficulty reaching a vein for certain procedures, the working procedure is to use is to inject sclerosa, causing the vein to collapse so it can be located. A simpler procedure involves injecting medication into the vessel.

30.     USA Vein's upper management encouraged its employees to use the more complex RFA procedure, even when it was not necessary and the simpler method would suffice, because Medicare reimbursed more for RFA, as much as $14,000 per treatment. The result from both methods was the same—collapse of the vein, and USA Vein chose the more complex RFA procedure for the sole purpose of increasing its reimbursement.

### B.     Upcoding for RFA

31.     Even when USA Vein physicians did not perform the unnecessary RFA procedure, they were encouraged to bill as if they did perform the procedure. Every specialist was encouraged to bill almost every procedure as an RFA. Patients who were given simple ultrasound treatments were nevertheless billed for RFA treatment.

32.     During a Monday ultrasound tech meeting, Deepa Thekkora said not enough patients were qualifying for additional treatment and suggested falsifying medical records to overstate the width of the blood vessels so more patients met the criteria for additional treatment. USA Vein also suggested manipulating ultrasound metrics by leaning onto the probe and holding the probe at an angle, causing the image of the vessels to become stretched out or appear at an

8

unusual angle. The ultrasound techs knew how to manipulate the test numbers to make patients appear to need more extensive treatment and were encouraged to do so.

33. The statutes implicated do not require proof that USA Vein violated the statutes, but rather only that Dr. Hennessy was motivated by a good faith and objectively reasonable belief that USA Vein was violating the federal and Texas statutes.

34. For patients covered by Medicare or other federal government payment programs, the acts described above constitute violations of the federal False Claims Act.

35. For patients covered by Medicaid or other state government payment programs, the acts described above constitute violations of the Texas Health Care Program Fraud Prevention Act

36. Dr. Hennessy opposed and reported these acts, and USA Vein was aware of his opposition and reports.

37. USA Vein terminated Dr. Hennessy because of his protected activity, thus violating the anti-retaliation provisions of the federal False Claims Act and the Texas Health Care Program Fraud Prevention Act.

## VI. TERMINATION IN RETALIATION FOR PROTECTED ACTIVITY

38. In December 2023, Dr. Hennessy called USA Vein's CEO, Dr. Yan Katsnelson, to oppose the false billing practices described above.

39. This constituted "efforts to stop 1 or more violations" of the FCA, which is protected activity under the False Claims Act (31 USC § 3730(h)(1)), and under the similar Texas statute. TEX. HUM. RES. CODE §36.115

40. Dr. Hennessy's protected activity was motivated by a concern regarding fraud against the government and included expressing concerns regarding USA Vein's false representations to the government in order to obtain government funds.

41. Dr. Hennessy's actions were aimed at matters that reasonably could lead to a viable claim under the FCA and were motivated by his good faith and objectively reasonable belief that USA Vein was committing fraud against the government.

42. Within a few weeks of this phone call, on December 27, 2023, USA Vein terminated Dr. Hennessy. The close temporal proximity between his protected activity and USA Vein's decision to terminate him constitutes strong evidence that he was terminated because of his protected activity.

## VII. DAMAGES

43. The FCA provides that a plaintiff is "entitled to all relief necessary to make [them] whole, if [they were] discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more [FCA] violations." 31 U.S.C. §3730(h)(1).

44. Relief includes "2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees." 31 U.S.C. §3730(h)(2).

45. The Texas statute provides similar relief. TEX. HUM. RES. CODE §36.115.

46. The doubling of back pay damages is mandatory. *Townsend v. Bayer Corp.*, 774 F.3d 446, 466 (8th Cir. 2014) (citing *Kakeh v. United Planning Org., Inc.*, 655 F. Supp. 2d 107, 124 (D. D.C. 2009)).

47. "[C]ourts allow recovery of damages for emotional distress, mental anguish, humiliation and injury to reputation under § 3730(h)." *Rutherford v. Jones Lang Lasalle Am., Inc.*, No. 12-14422, 2013 U.S. Dist. LEXIS 116872, at *11 (E.D. Mich. Jan. 29, 2013) (citing *Nguyen*

*v. City of Cleveland*, 2006 U.S. Dist. LEXIS 83282, 2006 WL 3333055 at *2 (N.D. Ohio Nov. 15, 2006).

48. Mental anguish damages can be significant. *See, e.g.*, *Giles v. General Electric Co.*, 245 F.3d 474, 489 (5th Cir. 2001) (awarding $150,000.00 compensatory damages award in employment discrimination case).

49. "Emotional distress is compensable as 'special damages' under § 3730(h)." *United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, No. EP-07-CV-247-PRM, 2008 U.S. Dist. LEXIS 78251, at *27 n.10 (W.D. Tex. Sep. 2, 2008) (citing *Neal v. Honeywell, Inc.*, 191 F.3d 827, 832 (7th Cir. 1999)). *See also Thompson v. Quorum Health Resources, LLC*, 485 Fed. App'x 783, 788 (6th Cir. June 22, 2012) (noting successful plaintiff's award under FCA included back pay, front pay, and pain and suffering damages); *Hammond v. Northland Counseling Center, Inc.*, 218 F.3d 886, 892-93 (8th Cir. 2000); *Neal v. Honeywell, Inc.*, 191 F.3d 827, 832 (7th Cir. 1999) (damages for emotional distress are compensable under FCA as special damages); *McKenna v. Senior Life Mgmt., Inc.*, 429 F. Supp. 2d 695, 699 n.5 (S.D.N.Y. 2006) ("Damages for emotional distress, as well as an award for future earnings in place of reinstatement, have been permitted under the [FCA's] statutory provision for 'special damages.'"); *Lipka v. Advantage Health Grp., Inc.*, No. 13-CV-2223, 2013 U.S. Dist. LEXIS 134435, at *25 (D. Kan. Sep. 20, 2013).

## VIII.   CAUSES OF ACTION

### COUNT ONE

### RETALIATORY DISCHARGE UNDER THE FALSE CLAIMS ACT, 31 U.S.C. §3730(h)

50. All paragraphs of this Complaint are incorporated herein by reference.

51. Plaintiff engaged in protected activity when he investigated and reported the fraudulent nature of Defendants' schemes.

52. Plaintiff's actions were aimed at matters that reasonably could lead to a viable claim under the FCA and/or demonstrated a distinct possibility of FCA litigation.

53. Plaintiff's actions were motivated by his good faith belief that Defendants were committing fraud against the United States.

54. Defendants were on notice that Plaintiff was investigating the fraud as evidenced by his multiple conversations wherein he complained about these fraudulent practices, including statements he made shortly before he was terminated. These conversations put Defendants on notice that litigation was a reasonable possibility.

55. Defendants retaliated against Plaintiff by terminating his employment in retaliation for protected activities including investigating and opposing fraudulent practices by Defendants in violation of the anti-retaliation provisions of the FCA, 31 U.S.C. § 3730(h).

56. Defendants' termination of Plaintiff was motivated by Plaintiff's protected activity described in this Complaint. Defendants retaliated shortly after Plaintiff engaged in protected activity, and the protected activity is the only possible cause of the termination of Plaintiff, as he was otherwise recognized as doing an excellent job.

57. Defendants' retaliation and termination inflicted damages on Plaintiff, including lost income, lost employment benefits, job search expenses, mental anguish and emotional distress.

58. Pursuant to 31 USC §3730(h)(2), Plaintiff is entitled to two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees, past and future earnings, lost employment benefits (including health insurance benefits and retirement contributions), job-search expenses, damages for humiliation, mental anguish, and emotional

distress, pre and post-judgment interest, litigation costs and attorneys' fees, and any other relief that this Court deems appropriate, all collectively in an amount to be determined at trial.

## COUNT TWO

## BREACH OF FIDUCIARY DUTY – MEDICAL PLAN

59. All paragraphs of this Complaint are incorporated herein by reference.

60. Defendants violated ERISA 29 U.S.C. §§ 1104, 1105, 1109, and/or 1132(a) by taking Plaintiff's COBRA payments and not procuring health insurance for him, in breach of their fiduciary duty.

61. As plan sponsors and plan administrators of the health and welfare benefit plans that provided Plaintiff and Defendants' other employees, Defendants had a fiduciary responsibility to the employees (and COBRA-electing former employees) who were beneficiaries of that plan and that coverage, including (A) a duty to use the health insurance premiums (including the premiums deducted from employees' paychecks as well as premiums paid for health insurance via COBRA) to pay for health insurance coverage and not to divert those funds for other purposes or uses, and (B) a duty to accurately communicate material facts to beneficiaries and not mislead beneficiaries or misrepresent facts about the terms and administration of a plan.

62. As CEO and managing member of USA Vein, Defendant Katsnelson had a fiduciary responsibility to the beneficiaries of that plan and that coverage (including former employees who elected and paid for COBRA coverage), including a duty to use the health insurance premiums to pay for health insurance coverage and not to divert those funds for other purposes or uses.

63. Defendant Katsnelson had control over making decisions about the health and welfare benefit plans that provided Plaintiff entitlement to health insurance coverage, including the decision whether or not to pay premiums to Blue Cross Blue Shield of Texas.

64. USA Vein and Katsnelson breached their fiduciary and co-fiduciary duties to Plaintiff by failing to remit health insurance premiums to Blue Cross and Blue Shield of Texas, and instead diverting, misusing, and stealing those funds from employees.

65. USA Vein and Katsnelson breached their fiduciary duties to Plaintiff by failing to remit the employer portion of premiums to Blue Cross and Blue Shield of Texas despite such payments being required by the health and welfare benefit plan.

66. As a result of Defendants' breach of their fiduciary duties to Plaintiff, Plaintiff has suffered actual harm including the loss of insurance premiums he paid, for which he received no insurance coverage, loss of benefits to which he was otherwise entitled, the exposure to medical bills that otherwise would have been covered, the inability to make decisions to delay medical care or find alternative coverage, the denials of service while medical bills remained outstanding with no information about whether or when those bills would get paid, all of which will cause significant financial and/or medical harm to Plaintiff.

67. As a remedy for Defendants' breach of its fiduciary duties to Plaintiff, Plaintiff seeks all monetary, injunctive, and equitable relief to which he may be entitled, including a reinstatement of coverage, payment of all medical bills that should have been paid under the terms and conditions of the applicable plan and policy, disgorgement of misused premium payments, and surcharge, restitution, and payment of all consequential damages.

## **PRAYER**

WHEREFORE, Plaintiff prays for the following relief:

1. Two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees, past and future earnings, lost employment benefits (including health insurance benefits and retirement contributions), job-search expenses, damages for humiliation,

mental anguish, and emotional distress, pre and post-judgment interest, litigation costs and attorneys' fees, and any other relief that this Court deems appropriate, all collectively in an amount to be determined at trial;

2. An award to Plaintiff pursuant to 31 U.S.C. §3730(d) of reasonable attorneys' fees, costs, and expenses;

3. Disgorgement of all insurance premiums paid, with interest and exemplary damages for breach of fiduciary duty, and

4. Such other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demand a jury trial on all issues triable to a jury.

Dated: June 30, 2025.

Respectfully submitted,

/s/ Cory S. Fein
Cory S. Fein
Cory Fein Law Firm
13105 Northwest Fwy, Suite 705
Houston, TX 77040
(713) 730-5001
(530) 748 - 0601 (fax)
cory@coryfeinlaw.com

*For Plaintiff Mark Hennessy*